IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KIMBERLY CULP, ) <br> ) <br>         Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JO ANNE B. BARNHART, Commissioner of ) <br> Social Security, ) <br> ) <br>         Defendant. ) | CV 04-913-CO <br><br> FINDINGS AND <br> RECOMMENDATION |

RORY LINERUD
Linerud Law Firm
PO Box 1105
Salem, OR 97308

    Attorney for Plaintiff

KARIN IMMERGUT
United States Attorney
CRAIG J. CASEY
Assistant U.S. Attorney
1000 S.W. Third Avenue, Suite 600

Portland, Oregon 97204-2902

LUCILLE G. MEIS
Office of General Counsel
DAPHNE BANAY
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, Washington 98104-7075

Attorneys for Defendant

COONEY, Magistrate Judge:

## INTRODUCTION

Plaintiff Kimberly Culp brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 USC § 405(g). The Commissioner's decision should be affirmed.

## BACKGROUND

At the time of the Commissioner's final decision, Culp was 41 years old. She completed two years of college and worked as a certified dietary manager in long term care and assisted living facilities. On June 5, 2001, Culp fell at work and injured her sacroiliac region.

Culp alleges disability since that date, due to degenerative disc disease, sacroiliitis, severe pain in the back and right leg, bursitis in the thigh, incontinence and side effects of narcotic pain medication. Tr. 79.[1]

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer (docket # 6).

**DISABILITY ANALYSIS**

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 US 137, 140 (1987); 20 CFR § 404.1520. Culp alleges that the ALJ erred in steps two and five.

At step two, the ALJ must determine whether the claimant has any impairment that is severe within the meaning of the Act. The claimant is not disabled if she has no "medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 US at 140-41; 20 CFR § 404.1520(c).

For the purposes of step five, the ALJ must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by her impairments. 20 CFR § 404.1520(e), 404.1545; Social Security Ruling (SSR) 96-8p.

If the adjudication reaches step five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. *Yuckert*, 482 US at 141-42; 20 CFR § 404.1520(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 US at 141-42; *Tackett v.*

*Apfel*, 180 F3d 1094, 1098 (9th Cir 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR § 404.1566.

### THE ALJ's FINDINGS

At step two, the ALJ found that Culp's sacroiliitis met the regulatory definition of a severe impairment. He found that Culp retained the RFC to perform a limited range of work requiring no more than light exertion:

> Non-exertional limitations narrow the range of light exertion work she can perform. Because of her sacroiliitis, she requires an option to stand and walk for 15 minutes after a period no longer than two hours. She is able to sit for two hours at a time with no overall limitations. She is unable to climb ladders, ropes or scaffolds. She is limited to occasionally climbing stairs and ramps. She is restricted to occasionally stooping and crouching. She is unable to stand and walk on uneven surfaces. Due to the effects of her medication, she is restricted to simple, routine, repetitive work. She must avoid exposure to hazards (machinery, heights, etc.) Because of her pain secondary to sacroiliitis, she will require unscheduled breaks of 15 minutes every two hours, in lieu of normal breaks.

Tr. 19.

At step five, the ALJ found that Culp could perform a significant number of unskilled sedentary to light exertion jobs in the national economy. The ALJ identified examples drawn from the testimony of the impartial vocational expert (VE): office helper, eyeglass polisher and order clerk. The Commissioner now concedes that the record does not support Culp's ability to perform the occupation office helper.

### DISCUSSION

Culp contends the ALJ erred at step two by failing to find her mental impairments severe within the meaning of the Act.

Culp challenges the ALJ's evaluation of the evidence in support of his RFC assessment alleging that he did not adopt limitations found by the agency medical consultants and failed to consider the impact of her non-severe mental impairments and obesity on her functional limitations.

Culp contends the ALJ erred in step five because he elicited vocational testimony with an incomplete hypothetical question that did not accurately reflect all of her limitations. She also contends the vocational testimony was not legally adequate because it conflicted with information in the *Dictionary of Occupational Titles* (DOT).

Culp's final claim of error is that the ALJ failed to develop the record.

## I. Step Two

Culp argues that the ALJ erred by failing to find her mental impairment severe within the meaning of the Act. For factual support, Culp relies on the Psychiatric Review Technique Form prepared by agency psychological consultant Robert Henry, PhD, and affirmed by his colleague Paul Rethinger, PhD. Tr. 213-226. This reliance is misplaced. Drs. Henry and Rethinger expressly concluded: "Impairment(s) not severe." Tr. 213.

For legal support, Culp relies on SSR 85-28, which provides that the ALJ can deny a claim at step two only if the evidence shows that the individual's impairments are not severe. SSR 85-28. This reliance is also misplaced. The ALJ did not deny Culp's claim at step two.

## II. RFC Assessment

Culp contends the ALJ erroneously failed to incorporate in his RFC assessment the findings of agency psychological and medical consultants.

Culp argues that the ALJ should have adopted the findings of Drs. Henry and Rethinger that she has mild limitation in social functioning and concentration, persistence or pace. This contention

5 - FINDINGS AND RECOMMENDATION

cannot be sustained because Drs. Henry and Rethinger concluded that her psychological condition resulted in no severe impairment. Tr. 213. By definition, this means that her psychological symptoms had no more than minimal impact on her ability to perform basic work activities. SSR 85-28; 20 CFR §§ 404.1520a, 404.1521a.

Consistent with this, Drs. Henry and Rethinger did not identify any functional limitation in any basic work-related activity. Reflecting this absence of evidence of any functional limitation, the ALJ properly excluded functional limitations from his RFC assessment. The ALJ's RFC assessment reasonably reflected the findings of the psychological consultants in context with the record as a whole.

Next Culp asserts that the ALJ failed to adopt the maximum sitting limitation from the RFC report prepared by agency medical consultants Robert McDonald, DO, and Scott Pritchard, DO. Drs. McDonald and Pritchard indicated that Culp would be able to sit with normal breaks for a total of about six hours in an 8-hour workday. Tr. 207.

The ALJ assessed Culp with the RFC to sit for two hours at a time, with the option to stand or walk during normal breaks and unscheduled breaks of 15 minutes every two hours. In doing so, he expressly relied on the treatment records and medical opinion of Culp's treating physician, James Webb, DO. Tr. 26. In August 2001, Dr. Webb opined that Culp required a work restriction of "no sitting longer than two hours without a 10 minute break." Tr. 175. Dr. Webb did not specify any limit in the aggregate time she could be seated during an 8-hour workday.

The ALJ is not bound by the findings of agency consultants who do not treat or examine the claimant. Their opinions are given weight only to the extent they are consistent with the medical

evidence and the record as a whole. SSR 96-6p. Here, the ALJ properly gave greater weight to the opinion of the treating physician in describing Culp's limited sitting ability. This was not error.

Culp also contends the ALJ failed to consider the impact of her obesity on her ability to work, in violation of SSR 02-01p. The ALJ gave full consideration to the RFC assessment of Drs. Pritchard and McDonald and adopted their findings to the extent they were consistent with the medical evidence and the record as a whole. Drs Pritchard and McDonald found that obesity was Culp's secondary diagnosis and made findings regarding Culp's functional limitations in that context.

By properly considering the RFC assessment of Drs. McDonald and Pritchard and evaluating all of the evidence of Culp's functional limitations, the ALJ adequately considered the impact of her obesity on her functional limitations and complied with SSR 02-01p.

### III. Vocational Evidence

Culp challenges the vocational testimony on two grounds. First, she alleges that the ALJ failed to elicit proper testimony because the hypothetical limitations he posed did not accurately reflect all of her limitations. Second, she contends the vocational testimony conflicted with information in the DOT.

#### A. Hypothetical Question

In step five, the Commissioner must show that the claimant can do other work which exists in the national economy. *Andrews v. Shalala*, 53 F3d 1035, 1043 (9th Cir 1995). The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Id.*

Culp argues that the ALJ elicited testimony from the VE with a hypothetical question that did not accurately reflect all of her limitations. She contends the ALJ should have included hypothetical

limitations reflecting the mild psychological findings of Drs. Henry and Rethinger, and the sitting limitation proposed by Drs. McDonald and Pritchard.

The ALJ properly excluded both. Culp's mild psychological symptoms did not cause any limitation in basic work activities. The ALJ may not incorporate limitations or restrictions that are not supported by the record. SSR 96-8p. The ALJ found that the sitting limitation imposed by Dr. Webb in August 2001 more accurately reflected Culp's functional limitation than the limitations proposed by the medical consultants. Tr. 26, 175. He was not required to incorporate the sitting limitations proposed by the agency medical consultants. *See Batson v. Commissioner*, 359 F3d 1190, 1197-98 (9th Cir 2004).

Culp also argues that the ALJ erred by failing to adequately describe to the VE his RFC finding that she is limited to occasional climbing of ramps and stairs. The ALJ posed a hypothetical question that included the limitation "worker can only occasionally engage in any climbing." Tr. 248. This reasonably reflects Culp's limitation. In any event, none of the occupations identified by the VE appear to require the use of ramps or stairs.

In summary, the ALJ elicited testimony from the VE with a hypothetical question based on an RFC assessment which reflected the limitations reasonably supported by the record as a whole. The ALJ's hypothetical question reflected reasonable conclusions that could be drawn from the record as a whole. This court finds no error in the hypothetical limitations used to elicit the vocational testimony.

**B.    DOT**

For information about the requirements of work, the Commissioner relies primarily on the DOT. 20 CFR Part 404, Subpart P, Appendix 2 § 200.00(b); *see also* SSR 00-4p. A vocational expert may be used to update the DOT and provide more specific information about the requirements of a particular job as it is performed in a particular setting. SSR 00-4p.

If testimony provided by a VE is inconsistent with DOT work requirement information, the ALJ must resolve the conflict before relying on the testimony to find that a claimant is not disabled. The ALJ must explain how the conflict was resolved. SSR 00-4p. An ALJ may rely on expert testimony which contradicts the DOT if the record contains persuasive evidence to support the deviation. *Johnson v. Shalala*, 60 F3d 1428, 1435 (9th Cir 1995).

Culp argues that the occupations eyeglass polisher and order clerk are described in the DOT as jobs requiring no more than sedentary strength. She believes this conflicts with the VE's testimony which was elicited based on a hypothetical worker capable of the strength requirements of light work. A person capable of the strength requirements of light work is also capable of the strength requirements of sedentary work. 20 CFR § 404.1567. If Culp is capable of the lifting required for light work, as the ALJ found, she can perform the strength requirements of the sedentary jobs identified by the VE. There is no conflict.

Next Culp argues that the occupations eyeglass polisher and order clerk are described in the DOT as jobs requiring the performance of tasks that are more complex than permitted under the ALJ's RFC assessment. The ALJ found Culp limited to simple, routine and repetitive tasks. The DOT descriptions do not support this claim. Both occupations require a repetitive sequence of simple tasks.

Finally, Culp argues that the occupations are described in the DOT as jobs requiring the use of machinery contrary to the ALJ's finding that she "must avoid exposure to hazards (machinery, heights, etc.)." Tr. 19. The occupation of eyeglass polisher requires the use of a polishing wheel and the occupation of order clerk requires the use of a time-stamping device and an intercom. This court is satisfied that these are not "hazards" to be avoided under the ALJ's RFC assessment.

Culp has not identified any significant conflict between the VE's testimony and the information in the DOT. Accordingly, the VE's testimony provided a proper legal basis from which the ALJ could conclude that Culp remained capable of performing other work in the national economy.

### IV. Development of the Record

Culp contends the ALJ failed to fully develop the record. An ALJ's duty to develop the record further is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F3d 453, 459-60 (9th Cir 2001); *Tonapetyan v. Halter,* 242 F3d 1144, 1150 (9th Cir 2001). Culp does not allege any grounds that would require the ALJ to develop the record further.

### RECOMMENDATION

Based on the foregoing, the ALJ's determination was based on proper legal standards and supported by substantial evidence. The Commissioner's final decision should be affirmed and final judgment should be entered pursuant to sentence four of 42 USC § 405(g) dismissing this case with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure,

should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this __14____ day of April, 2005.

_____/s/_____

John P. Cooney

United States Magistrate Judge